[No. 617.    August 5, 1896.]

## M. W. STANTON, APPELLANT, v. THOMAS. B. CATRON, APPELLEE.

CREDITOR'S BILL—SUFFICIENCY OF ALLEGATIONS.—A judgment creditor causing property to be levied on and advertised for sale under the judgment, can not maintain a bill to remove, as a cloud upon the title, a conveyance of the property by the judgment debtor, made after the judgment lien attached, upon a mere allegation that, by reason of such conveyance, sufficient could not be realized from the sale of the property to satisfy the judgment, where it is not alleged in the bill that the judgment debtor has no other property out of which the judgment might be satisfied.

ID.—BILL TO QUIET TITLE—JURISDICTION.—A creditor's bill based upon a judgment lien on land, does not set forth such interest in the land as to vest the court with jurisdiction to entertain the suit to quiet title to the property.

APPEAL, from an order sustaining a demurrer to the bill, from the Second Judicial District Court, Bernalillo County. Affirmed.

The facts are stated in the opinion of the court.

A. B. McMILLEN for appellant.

A mortgagee is entitled to enforce his lien, no matter what his remedy at law may be. Ober v. Gallagher, 93 U. S. 199; Case v. R. R., 101 Id. 199.

Adequate relief requires that the rights of the parties be determined, and all obstructions removed, so that the appellant may know what interest he is selling, and the purchaser what interest he is buying. Freeman on Executions, sec. 430.

One who has a judgment lien on real estate may maintain an action to have the lien declared superior to a claim asserted to be superior to it, or to have any obstruction removed. McAfee v. Raynolds, 130 Ind. 33; 30 Am. St. Rep. 194; Lamson v. Jorden, 19 Ark. 297; 70 Am. Dec. 601; Myers v. Hewitt, 16 Ohio, 449; Tuck v. Old, 29 Fed. Rep. 738; Jones v. Green, 1 Wall. 330; Shaw v. Dwight, 27 N. Y. 244, 84 Am. Dec. 275.

The statutes make any claim of title a cloud, and the same may be removed by a bill to quiet title by any one having or claiming an interest in the land. Comp. Laws 1884, sec. 2214. And a judgment creditor having no title to lands in controversy, but only a general lien, may maintain such an action. Shaw v. Dwight, supra. See, also, the following decisions under similar statutes. Holland v. Challen, 110 U. S. 15; Raynolds v. Bank, 112 Id. 405; Frost v. Spitley, 121 Id. 552; Moore v. Stinebach, 127 Id. 70; Ely v. R. R., 129 Id. 291.

NEILL B. FIELD for appellee.

The demurrer only admits what is well pleaded. It does not admit mere legal conclusions, as "that Catron's deed would be a cloud upon the title of the purchaser." Dollin v. Barnard, 21 Wall. 437; Lea v.

Robeson, 12 Gray, 280; Branham v. San Jose, 24 Cal. 602.

Courts of equity have jurisdiction, upon proper application by a judgment creditor, to remove obstructions to the enforcement of the final process of a court of law, but, to entitle him to such relief, there must be a judgment of a court of competent jurisdiction; an execution in the hands of a duly qualified officer; and an unlawful or fraudulent obstruction to the enforcement of the execution. They will only in extraordinary cases go further and collect the debt by decreeing a sale of the property unlawfully or fraudulently conveyed. Bump. on Fraud. Convey. 566, and citations.

The bill is fatally defective, in that it contains no allegation that Baca was not the owner of the property sufficient to satisfy the execution without resort to that deeded to Catron. Brinker v. Kelsey, 72 Ind. 51; Adams v. State, 87 Id. 803; Sherman v. Hoaglund, 73 Id. 472; Spaulding v. Blythe, Id. 93; Emery v. Yount, 7 Colo. 107.

The bill contains no allegation that complainant exhausted Baca's other property before attempting to sell the land embraced in Catron's deed, and is fatally defective for that reason. 1 Black on Judgs., sec. 440; James v. Hubbard, 1 Paige, 228; Bank v. Creswell, 100 U. S. 630.

The bill is multifarious under every definition of that term. 15 Am. and Eng. Ency. of Law, 947.

A bill to quiet title can not be maintained in equity, independent of statute, without clear proof of both possession and legal title in the complainant. U. S. v. Wilson, 118 U. S. 86; Caton v. Smith, 18 How. 263; Hipp v. Babin, 19 Id. 271; Ellis v. Davis, 109 U. S. 485; Kellain v. Ebbinghaus, 110 U. S. 568; Fussell v. Gregg, 113 U. S. 550.

Our statute attempts to dispense with the requisite of possession, but not that of legal title. Frost v. Spitley, 121 U. S. 552; Holland v. Challen, 110 Id.

Hamilton, J.—This cause comes to us by appeal from the Second judicial district, where a decree was entered sustaining a demurrer and dismissing the bill of complaint. The allegations contained in the bill, to which a demurrer was sustained, are substantially as follows:

That on the twelfth day of August, 1893, the complainant, M. W. Stanton, obtained a judgment in the district court in and for the county of Valencia, in the territory of New Mexico, against one Roman A. Baca, for the sum of $1,793 damages, and $23.57 costs of suit; that on the fifteenth day of August, 1893, said judgment was duly docketed by the clerk of said district court, in a book kept in his office for that purpose, and on the same day a certified transcript of the docket of said judgment was duly filed with the probate clerk and ex-officio recorder of Bernalillo county, in said district, which said transcript was by said recorder duly filed and recorded in a book kept in his office for that purpose, by which record of said transcript of said judgment in said county of Bernalillo the said complainant acquired a lien on all the real estate of said Roman A. Baca in said Bernalillo county, from the date of the filing of said transcript; that on the eighth day of September, 1893, said complainant caused an execution to be duly issued out of said district court of Valencia county and delivered the same to the sheriff of said county; that the said sheriff afterward, to wit, on the twenty-seventh day of October, 1893, returned said execution nulla bona, said|Valencia county being where said Roman A. Baca resided.

It is then charged in the bill, in paragraphs 7 and 8, that at the time of the rendition of said judgment and the filing of the transcript in the county of Bernalillo, the said Roman A. Baca was the owner of an interest in certain land in said bill mentioned, known, and called the Bartolome Fernandes or San Miguel Spring Grant,

which land is fully described in the bill. It is further charged in the bill in paragraph 9, that on the eighth day of May, 1894, the said complainant caused to be issued out of the district court in and for the county of Valencia another execution, and on said day delivered the same to the sheriff of the county of Bernalillo; that said sheriff thereupon on said day levied said execution on all of the right, title, and interest of the said Roman A. Baca in and to the said above described real estate, and the said sheriff under said execution proceeded to advertise said land for sale to satisfy the said execution. It is further charged in said bill, in paragraph 10, that:

"Your orator further represents that thereafter, to wit, on the twenty-sixth day of May, A. D. 1894, the defendant, Thomas B. Catron, caused to be filed with the probate clerk and ex-officio recorder of the county of Bernalillo a deed of bargain and sale from the said Roman A. Baca to the said Thomas B. Catron, being dated the eighteenth day of April, 1894, wherein and whereby the said Roman A. Baca conveyed to the said Thomas B. Catron all his right, title and interest in and to the land hereinbefore described, and the said Catron gives it out and claims that he holds the said land free from the judgment lien of your orator, and that his claim to said premises is superior thereto."

It is also charged in said bill, paragraph 11:

"Your orator further shows that if said land might be sold upon said execution, that the remedy thereby would be inadequate, that said conveyance to said Catron would be a cloud on the title of a purchaser under said execution and said land can not be sold for its reasonable value, except under an order of this court, adjusting the rights of the respective parties herein."

Then follows a prayer that the several liens of the said complainant and the said defendant be marshalled

and the amounts thereof ascertained, and that the lien of the complainant be decreed by the court to be a superior and prior lien to the claim of the defendant, Catron, and that the property be sold and the proceeds thereof brought into court for distribution according to the several priorities of the parties litigant herein. To this bill the defendant, Catron, filed a demurrer in the court below, upon the ground, first:

"That the said complainant has an adequate remedy at law for the redress of the grievances, if any, set out in said bill of complaint; and, second, that the said complainant has not, in and by his said bill, made or stated such a case as entitles him in a court of equity to any relief from or against this defendant, touching the matters contained in said bill, or any of such matters."

This demurrer was sustained by the court below, and the complainant declining to amend his bill, but electing to stand upon the sufficiency thereof the court entered a decree dismissing the bill, from which an appeal has brought the case to this court.

The complainant assigns as a ground for the reversal of the decision of the court below, first:

"That the district court erred in sustaining the demurrer to the bill of complaint; second, that the district court erred in dismissing complainant's bill of complaint."

The question is presented for our consideration as to whether the ruling of the district court was correct in sustaining the demurrer and dismissing the bill.

Courts of equity entertain jurisdiction at the suit of a judgment creditor in those cases where the bill discloses a state of facts showing that the remedy at law is inadequate to accomplish the relief. In those cases where a discovery of assets is sought to be obtained; or where it is desired to reach equitable or other interests in property not subject to levy and sale under an

execution at law; or where a fraudulent or collusive conveyance has been made with the view of placing the property of the debtor beyond the reach of levy and sale under an execution, a court of equity will lend its aid to the creditor in securing to him that relief which he could not otherwise obtain. It may be said therefore, that there are at least three classes of cases in which the creditor may successfully appeal to a court of equity for aid in the enforcement of his demands against a debtor. First, in those cases where he seeks the satisfaction of his debt out of a trust fund, which is not subject to the demands of a judgment and execution at law. In this class of cases it is said that he may come directly into a court of chancery without first resorting to a judgment and execution at law.

As stated by Chief Justice MARSHALL, in the case of Russell v. Clark's Executors, 7 Cranch, page 87:

"If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law."

The jurisdiction in this class of cases is based upon the peculiar right of a court of chancery to decree and enforce a trust. It is not pretended by the complainant in the case at bar, that he comes within this class of cases; he is not seeking satisfaction out of a trust fund belonging to his debtor which is beyond the power of a court of law to reach.

Another class of cases is where the creditor after having obtained his judgment at law, seeks to set aside and remove a fraudulent conveyance made by the debtor, by which the property of the debtor has been placed beyond the reach of an execution. In a case like this, it is said, the creditor may come into a court of chancery as soon as he obtains his judgment and ask to have the fraudulent conveyance set aside without wait-

ing for the return of an unsatisfied execution. It can
not be contended that the complainant has brought
himself, by the allegations of his bill, within this class
of cases; it is not stated or pretended in any of the
allegations of the bill that the deed from Baca to Catron
was fraudulent and void, or that it was made collusively
or with the intention to defraud the complainant or any
of the creditors of Baca. There is not a line or word
in the bill. that charges the deed to have been made
fraudulently and without consideration. For aught
that appears on the face of the bill, Catron may have
bought this land in the utmost good faith and for a
valuable consideration paid by him to Baca. Indeed,
we must assume, in the absence of an allegation in the
bill to the contrary, that Catron bought this land in
good faith and for a valuable consideration, subject only
to the rights of the complainant under his judgment
lien.

Another and a much larger class of cases in which
the creditor more ·frequently· calls upon a court of
chancery, are those where the creditor seeks to satisfy
his debt out of some equitable estate of the defendant,
which is not liable to levy and sale under an execution
at law; where he seeks to remove an obstruction or a
hinderance in the way of the enforcement of his levy
and sale of the property. If the complainant could
have any standing in a court of chancery for the
enforcement of his demands in this case, it must be
that he intends to bring himself under this latter class
of cases.

Do the allegations of the bill show a state of facts
which entitles the complainant to the aid of a court of
equity in the enforcement of his demands under his
execution? It is a proposition too well settled by a
line of decisions, both state and federal, to admit of
controversy, that in this latter class of cases in order
that a creditor may successfully call upon a court of

chancery for help he must first have exhausted his remedy on the law side of the court by obtaining a judgment and getting an execution with return thereon unsatisfied. In other words, the remedy at law must be exhausted before he can come into a court of equity for the purpose of reaching the equitable estate of the defendant. It is necessary that this should be done in order to give a court of chancery jurisdiction, because if this is not done, it will not appear but that the party may have a complete and adequate remedy at law. The judgment must be obtained, execution issued, and there must be a return thereon unsatisfied, before he can maintain a creditor's bill to reach the property not subject to execution. This is the general, if not the universal, rule, and these facts must appear upon the face of the record itself. See Miller v. Davidson, 44 Am. Dec. 715; Jones v. Green, 1 Wall. 330; Stewart v. Fagin, 2 Woods, 215; Public Works v. Columbia, 84 U. S. 521; 3 Pomeroy's Equity Jurisprudence, secs. 14, 15. Also see cases in note in case of Jones v. Green, 68 U. S., L. C. P. Company.

The only allegation in this bill upon which the complainant could ask relief is as follows:

"Your orator further shows that if said land might be sold upon said execution that the remedy thereby would be inadequate; that said conveyance of Catron would be a cloud upon the title of the purchaser under said execution, and said land can not be sold for its reasonable value except on an order of the court adjusting the rights of the respective parties herein."

The bill shows that the judgment was obtained on the twelfth of August, 1893; that a transcript thereof was on the fifteenth day of August, 1893, filed and recorded in the probate clerk's office in Bernalillo county, making it a lien upon the property of Baca in that county. The deed to Catron was not made until the eighteenth day of April, 1894, some eight months

afterward. The complainant had issued an execution which was in the hands of the sheriff of Bernalillo county, and a levy was made upon the property and the property advertised for sale when he filed this bill. It must appear, therefore, from the affirmative allegations of the bill, that the complainant has not exhausted his remedy at law. He did not sell the property under his levy and advertisement, and he does not show any reason for not having done so. He admits indirectly that the property might have been sold under his execution; he does not allege that the deed of Catron in any way obstructed or prevented the sale, or that by the execution of that deed to Catron he was in any way prevented from selling the property and passing title to the purchaser under that sale. He says that the remedy at law would be inadequate; in what way he does not state; he does not allege any facts from which it can be seen that the remedy at law would not be adequate by a sale under his execution. This is the statement of a conclusion, and not the allegation of a fact from which the court can see that the remedy would be inadequate. He should have sold the property under his execution, or at least should have attempted to do so, or should set forth some good reason for not doing so, and had a return of that execution, and thus be able to show to the court that his remedy at law was inadequate and incomplete. For aught we know, purchasers may have been ready to buy the property under his sale, and he might have obtained satisfaction of his judgment. In view of the facts as stated upon the face of the bill, that his execution stood upon a judgment antedating the deed to Catron, we can not assume that purchasers would not have been at that sale, or that the sale would have been in any way hindered or obstructed by the existence of Catron's deed. It is not the province of a court of chancery to lay hold of executions from the law courts and enforce

them until the parties holding such executions have exhausted their power to collect under them.

In the case of Brinkerhoff v. Brown, 4 Johnson's Chancery Reports, page 675, the court uses this language:

"I apprehend this to be the settled rule in chancery; and that this court does not, as of course, assume jurisdiction, in taking executions upon judgments at law into its own hands. Such power would be oppressive to the debtor and to the court. The presumption is, that the court which renders judgment is competent to enforce it; and it is only in special cases, in which property can not be found to satisfy it, that this court interferes to discover and reach the property. But the legal remedy by execution must first be tried. The court is not to know by anticipation that it will be ineffectual. Upon such an allegation, it might assume the collection of all simple contract debts, in the first instance, without even requiring the creditor to prosecute his demand to judgment at law. It is sufficient, however, to observe, that I find the rule to have been long and uniformly established that, "to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show, that he has proceeded at law to the extent necessary to give him a complete title."

This rule is established in this decision and in other cases referred to by the court in that opinion.

In the case of Jones v. Green, above mentioned, 1 Wall. 330, in considering this question as to the right of a creditor to maintain a bill without having first exhausted his remedy at law under execution, Justice FIELD, who renders the opinion, uses this language:

"The objection, that the complainants have not shown any attempt to enforce their remedy at law is fatal to the relief prayed. A court of equity exercises its jurisdiction in favor of a judgment creditor only

when the remedy afforded him at law is ineffectual to
reach the property of the debtor, or the enforcement
of the legal remedy is obstructed by some incumbrance
upon the debtor's property, or some fraudulent trans-
fer of it.

"In the first case, the court, when its aid is invoked,
looks only to the execution and the return of the officer
to whom the execution was directed. The execution
shows that the remedy afforded at law has been pur-
sued and, of course, is the highest evidence of the fact.
The return shows whether the remedy has proved
effectual or not, and from the embarrassments which
would attend any other rule, the return is held conclu-
sive. The court will not entertain inquiries as to the
diligence of the officer in endeavoring to find property
upon which to levy."

The facts in the case at bar show that the remedy
has been pursued by obtaining the judgment and issu-
ing the execution, making the levy and advertising the
property for sale, but at this latter point the complain-
ant seems to have abandoned his remedy, turned back
and given up the pursuit before ascertaining what could
be accomplished by the sale of the property under his
advertisement. This shows that the complainant has
not exhausted his remedy at law, but has abandoned it
before ascertaining what could be accomplished un-
der it.

It is insisted by the complainant that his execu-
tion and sale will be ineffectual to collect the money,
and that the property if sold will not bring sufficient
to pay his debt. We can not assume from
CREDITORS'
bill: sufficiency the allegations of the bill that this would
of allegations.
be the result. If we were to assume juris-
diction in this case upon the facts stated, then we
might assume jurisdiction in the case of any execution
upon an allegation that the property would not bring
sufficient money to pay the debt. It is not sufficient

for us to assume that the remedy at law would be incomplete upon a mere allegation that the property of the debtor at the sale under the execution will not bring its full value.

Another point which is fatal to the right of the complainant to maintain his bill is the fact that 'the bill fails anywhere to allege that the defendant Baca had no other property out of which this judgment might be satisfied, and upon which levy might be made and the money collected. For aught that appears on the face of the bill, the defendant Baca may have in the county of Bernalillo other property of ample value out of which this execution might be satisfied. The bill is entirely silent upon this question, and we can not assume, in the absence of such an allegation, that the defendant Baca had no other property out of which the execution might be satisfied, save that upon which the levy was made. We understand it to be the rule, that in order to successfully invoke the aid of a court of equity on behalf of a judgment and execution creditor, he must allege in his bill, and prove at the hearing if denied, that the debtor had not sufficient other property liable to sale and execution out of which to satisfy the judgment. Payne v. Sheldon, 63 Barber, 161; Clarkson v. DePeyster, 3 Paige, 320; Brinkerhodd v. Brown, 4 Johnson, 671; James v. Hubbard, 1 Paige, 228; Savings Bank v. Creswell, 100 U. S. 630.

We therefore conclude that the complainant has not exhausted his remedy at law, or alleged a state of facts upon which a court of equity could give him the relief prayed for.

Another ground upon which the appellant contends for the right to maintain this bill is, that this is a suit to quiet title brought under section 2214, of the Compiled Laws; that although he is simply a judgment creditor claiming a lien upon the property, he has the right to maintain

BILL to quiet title: jurisdiction.

this suit under this statute. An examination of the bill makes it difficult to see upon what ground this contention can be sustained. It is more in the nature of a bill for the marshalling of conflicting liens and to decree one lien superior to the other; and he asks to have the property sold and the money brought into court and distributed. He does not claim anywhere in the bill that he owns the land in controversy or has any title or interest in the title thereto, and there is no prayer that the title to the lands be quieted in his favor. It is quite clear that it could not have been the intention of the draughtsman to frame this bill under the section of the statute for the quieting of title, but inasmuch as the contention is made and the appellant has devoted some length to its discussion we will consider and dispose of the point as though the bill were framed upon that theory.

Section 2214, Compiled Laws, provides:

"An action to determine and quiet the title of real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto."

Under this section any person having or claiming an interest in real property, whether in or out of possession, may bring his bill to determine and quiet the title against any person claiming title thereto. Under the general equity practice, a bill to quiet the title to real estate could not be entertained independently of the statute, except upon the allegation and proof of both title and possession in the plaintiff. Formerly a bill of peace could be sustained against a party making repeated but unsuccessful claims against real estate. To entitle the plaintiff, however, to a recovery he must establish possession of the property in himself. His possession must have been disturbed by repeated actions at law and his right must have been established

by successive judgments in his favor.   These facts being established, a court of equity would interfere and quiet his possession and thus put an end to vexatious litigation.   Pomeroy's Equity Jurisprudence, 248; Stark v. Starr, 6 Wall. 402; Holland v. Challen, 110 U. S. 15.

A bill to remove a cloud from the title to real estate was entertained for the purpose of removing existing causes which might in future lead to vexatious litigation affecting the title to property, and in those cases it was necessary that the plaintiff should be in possession of the property and that his title should be established at law or founded upon long continued possession.   See cases above cited.

In the case of Frost v. Spitley, 121 U. S. 552, Justice GRAY uses this language:

"Under the jurisdiction and practice in equity, independently of the statute, the object of a bill to remove a cloud upon title, and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession or harassed by suits in regard to that title; and the bill can not be maintained without clear proof of both possession and legal title in the plaintiff."

In the case of Orton v. Smith, 18 How. 265, the court observes:

"Those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title."

Under these authorities it is clear that under the general jurisdiction in equity, independently of the statute, a bill to remove a cloud from, and quiet the title to real estate, could not be maintained without clear proof of legal title and possession in the plaintiff. Our statute, above quoted, has enlarged the jurisdiction of the courts of equity from what they formerly

were in cases of this character, and has dispensed with the possession of the plaintiff as a necessary prerequisite to his right to maintain the suit. While the statute has thus enlarged the jurisdiction and has dispensed with the necessity of possession in the plaintiff, yet it has not done away with the other requirements necessary to be alleged and proven as a prerequisite to his right to maintain the suit. While possession in the plaintiff is no longer necessary, the allegation and proof of title in some form in the plaintiff would seem to be still left undisturbed as a necessary foundation upon which to base his right to sustain the action. The allegation and proof of title has ever been the basis of this form of action in courts of equity prior to the adoption of the statutes in the several states upon this subject. It has ever been the title of the plaintiff which he has sought to have quieted against the demands of an adverse interest. It is his title which is the groundwork of the action. Can it be said that the legislature, in their enactment of these statutes to quiet title have done away with the necessity of alleging and establishing the very thing which they intend the court shall determine and quiet, to wit, the title of the plaintiff? Statutes of a similar character to that of ours, but differing slightly in form and phraseology, have been adopted in many of the states and territories. The adoption of these statutes has had a wholesome and salutary effect in providing a remedy by which may be settled the conflicting claims to land, giving repose and security to titles, and thus aiding in the growth and upbuilding of the country in the localities in which they are adopted. As observed by Justice · FIELD, in speaking of those statutes, in the case of Holland v. Challen, 110 U. S. 21:

"It is certainly for the interest of the state that this jurisdiction of the court should be maintained, and that the causes of apprehended litigation respect-

ing real property, necessarily affecting its use and enjoyment, should be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is a matter of every day observation that many lots of land in our cities remain unimproved because of conflicting claims to them. The rightful owner of a parcel in this condition hesitates to place valuable improvements upon it, and others are unwilling to purchase it, much less to erect buildings upon it, with the certainty of litigation and possible loss of the whole. And what is true of "lots in cities, the ownership of which is in dispute, is equally true of large tracts of land in the country."

The object and purpose to be accomplished by these several statutes is distinctly set forth and may be clearly gathered from the language of their several enactments. Manifestly, it is for the purpose of settling controversies to real estate, establishing the title thereto, and giving repose and security to the successful litigant against the demands of an adverse claim thereon. They remove some of the hardships and inconveniences under the old rule and allow the complainant, whether in or out of possession, to come into a court of equity and establish his title against the adverse demands of the conflicting claimant. It is not a controversy between conflicting liens arising either between a judgment creditor upon the one hand and a mortgagee on the other, or between a judgment creditor and a purchaser, that is to be settled under these statutes. It is not to marshal, establish and quiet liens that these statutes are enacted, but to establish and quiet the title to real estate. If it be the title to the land that is to be established and quieted, how is this to be done unless the plaintiff be required to assert and prove his title? If he has no title what has he to quiet? Manifestly nothing. How can he ask a court of equity to establish and quiet for him that which he has not, and

to which he does not lay any claim or offer proof to establish? He should come into court asserting his title before the defendant should be required to establish his adverse interest. He should establish this title as the foundation upon which a court of equity may construct a decree giving to him the quiet and uninterrupted enjoyment of his estate. This, we understand to be the settled rule in both federal and state courts under statutes of this character. In the case of Holland v. Challen, above referred to, the supreme court had under consideration the statute of Nebraska containing the following language:

"That an action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting the title to such real estate."

Justice FIELD, in rendering the decision in that case, page 25, observes:

"Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court."

Also in the case of Frost v. Spitley, 121 U. S. 557, the court, in passing upon the same statute, reaffirms the doctrine of the former decision, and say:

"The requisite of the plaintiff's possession is thus dispensed with, but not the other rules which govern the jurisdiction of courts of equity over such bills. Under that statute, as under the general jurisdiction in equity, it is 'the title,' that is to say, the legal title, to real estate, that is to be quieted against claims of adverse estates or interests."

This was a bill to quiet title to real estate in Nebraska brought under the same statute, and the court held that a bill in equity to quiet title could not be maintained under the general equity practice or under the Nebraska statute by one having a mere equitable title alone; that under the peculiar language of the Nebraska statute, viz., "any person or persons claiming title to real estate," it required that the plaintiff should show a legal title before he could maintain his action. The same court, in the case of Reynolds v. Crawfordsville Bank, 112 U. S. 405, had under consideration a bill to quiet title brought under a statute of Indiana, which reads as follows:

"An action may be brought by any person, either in or out of possession, or by any one having an interest in remainder or reversion, against another who claims title to or interest in real property adverse to him, although the defendant may not be in possession thereof, for the purpose of determining and quieting the question of title."

In that case the party asserted title under a quitclaim deed, and the court reaffirmed the doctrine of the former cases, but held, that under this statute an equitable title was sufficient to justify the relief prayed for. In the case of Stark v. Starr, herein referred to, the supreme court of the United States had under consideration a suit to quiet title under a statute of the state of Oregon, as follows (6 Wall. 409):

"Any person in possession of real property may maintain a suit in equity against another who claims an estate or interest therein adverse to him, for the purpose of determining such claim, estate or interest."

On a final hearing the court reversed the case and ordered the bill dismissed, holding that even under this broad statute of Oregon providing "any person in possession" may maintain the suit, that his possession must be accompanied with a claim of right; "must be

founded upon title." After quoting the statute, Justice
FIELD observes:

"We do not, however, understand that the mere
naked possession of the plaintiff is sufficient to author-
ize him to institute the suit, and require an exhibition
of the estate of the adverse claimant, though the lan ·
guage of the statute is that "any person in possession,
by himself or his tenant, may maintain" the suit. His
possession must be accompanied with a claim of right,
that is, must be founded upon title, legal or equitable,
and such claim or title must be exhibited by the proofs,
and, perhaps, in the pleadings also, before the adverse
claimant can be required to produce the evidence upon
which he rests his claim of an adverse estate or in-
terest."

The statute of Oregon, under which this decision
was rendered, it will be observed is broader than ours.
That statute gives the right to any person in possession.
The statute of Indiana, passed upon in the case of
Reynolds v. Bank, gave the right to any person, in or
out of possession, having an interest in reversion or
remainder. Under these statutes the supreme court
declared that to maintain the suit the party must have
a legal or equitable title to the land. Our statute gives
the right to "anyone having or claiming an interest
therein." Having or claiming an interest in what? In
a mere judgment lien or other disputed security upon
the land? Clearly not; but an interest in the title to
the real estate, the title to which it is sought to
have quieted. The language of our statute is almost
identical with the statute of Indiana, and is less broad
than that of Oregon, and the rule which has been
adopted by the supreme court of the United States in
passing upon these statutes applies with equal, if not
greater, force to the statute of New Mexico. It there-
fore follows that the complainant must come into court
asserting in his pleadings and establishing by his proofs

a title, either legal or equitable, to enable him to maintain his suit under the statute to quiet title.

The bill in this case shows the complainant to be a judgment creditor claiming a general lien, by virtue of his judgment, upon the lands in controversy. No title to the property is asserted. What relation does a judgment creditor bear to the land of the debtor upon which he has a general lien by virtue of his judgment? Not that of an owner of the property, or one having an interest or right in the title to the land itself, but simply that of a general lien upon the lands, which confers upon the judgment creditor the right to levy upon and sell the same to the exclusion of other adverse interests subsequent to the judgment. The title to the land is not transferred by the judgment from the judgment debtor to the judgment creditor, but remains in the judgment defendant. Other judgment creditors may levy upon the land and sell it. The debtor may sell and dispose of the land and pass title thereto in any way he sees fit, subject of course to the rights of the creditor under the lien of his judgment. The judgment creditor is simply vested with the power to make the general lien of his judgment effective in pursuing the remedy which the law gives in issuing execution, levy and sale of the land. By following up diligently the remedy which the law has given him he may thus vest himself with a title in the specific land on which theretofore he had only a general lien. Until this is done no title to the land passes to or is vested in him. His judgment is simply a link in the chain which may be lengthened into a title in his favor. This view we understand to be sustained by the supreme court in the case of Conrad v. Atlantic Insurance Co., 1 Peters, 386, 443; Brown v. Pierce, 7 Wall. 207; 1 Black on Judgments, sec. 400, and cases cited; Young v. Templeton, 50 Am. Dec. 563.

The appellant in this case having based his suit

upon a judgment lien, has not stated or set forth such title in the land or interest in the title as to vest the court with jurisdiction to entertain his suit to quiet title to the land mentioned.

The decree of the district court sustaining the demurrer and dismissing the bill was correct and will be affirmed.

SMITH, C. J., LAUGHLIN and BANTZ, JJ., concur.