## Case No. 13,426.

### STEWART v. FAGAN et al.

[2 Woods. 215.] [1]

Circuit Court, D. Louisiana. April Term, 1876.

CREDITOR'S BILL—CLAIM REDUCED TO JUDGMENT —EXECUTION — SALE UNDER DECREE IN ADMIRALTY—PURCHASER'S RIGHTS.

1. It is an indispensable prerequisite to a creditor's bill which seeks to subject property of the debtor, fraudulently conveyed, to the payment of the complainant's claim, that the claim should first have been reduced to judgment.

[Cited in Talbott v. Randall, 5 Pac. 536.]

2. A sale made in pursuance of a decree of a court of admiralty, obtained without fraud, cuts off all claims of the original builders of the boat or other creditors, and of her owners.

[This was a bill in equity by Thomas J. Stewart against William Fagan and others.]

The bill alleged that the complainant was the indorser and holder of a large number of drafts, drawn by "Miles Owen for steamer Katie", on one J. Pinckney Smith, and accepted by him; all dated April 6, 1872, except three, dated November 1, 1872, and transferred by the payees to complainant; all of which were due and unpaid. It was further alleged that one J. M. White caused the steamer Katie to be built at Louisville, Kentucky, and gave the several drafts now held by complainant for liabilities incurred in building and fitting out said steamer. On the 29th of February, 1872, White being insolvent, and having no property but the Katie, mortgaged her to certain of his creditors, as follows: to Wm. Fagan & Co. for $8,000, to Lagan & Macinson for $4,000, to Richard England for $4,000, to McCloskey, Bigley & Co. for $9,000, and to Edward Connery & Son for $20,000. It was charged that these creditors took their mortgages for round sums, which were more than were due them, knowing that White was insolvent, and for the purpose of obtaining an unjust and fraudulent preference over other creditors. The bill further stated that said J. Pinckney Smith was originally bound with White for the debts contracted in building and fitting out said steamer, and conspired with said mortgage creditors to prevent the Katie from being subjected to the claims of her builders and White's general creditors, and induced said Miles Owen to become the purchaser of said steamer, which he did on the 7th day of March, 1872, a few days before the 13th of March, 1872, when an involuntary petition in bankruptcy was filed against White by Philip McCullough & Co., his creditors; that Miles Owen was at the time of the purchase without any knowledge of the steamboat business, and took the title of said boat at the instance of Smith, and to serve his own and the purposes of the mortgage creditors, and gave the management of the boat to a committee composed of Wm. Fagan, D. C. McCan and J. Pinckney Smith. It was further alleged, that on

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the 29th of August, 1872, Owen mortgaged said boat to Wm. Fagan & Co. for $7,259, to E. Connery, Son & Co. for $10,601, and to fifteen other firms and individuals for specific amounts, all of which are set out in the bill; and that Miles Owen was a mere man of straw, interposed to take the title of the boat for the benefit of said mortgage creditors and said Smith, and that he did not pay for her; that in pursuance of the plan to place said boat beyond the reach of the claims held by complainant, the committee, which had her in charge, permitted her to be libeled in admiralty in the U. S. district court for Louisiana by the Underwriters Wrecking Company in November, 1872; that an order of sale was obtained, and the boat sold after five days notice; that after the order of sale was obtained, the libel was dismissed; but nevertheless the boat was afterwards, on the 11th of January, 1873, sold to Wm. Fagan, one of the committee, for $23,000. The sale was advertised for cash, but on the day preceding the sale, the court allowed the marshal to receive and take a bond for the entire price, except a sufficient sum to pay costs and the expenses of sale; but this privilege was extended only to the mortgage creditors of the boat. After this, the bill alleged, Fagan made a pretended sale of the boat to John W. Cannon, who acknowledged that he held the boat for the benefit of the mortgage creditors; that Cannon paid nothing on the boat, but assumed to pay within one and two years the debts which had been recognized by Miles Owen, by the mortgage of August, 1872; he agreed to render statements of the expenses and earnings of the boat to the mortgage creditors, for whom he in fact held the boat; that he ran said boat for two years, and her net earnings during that time amounted to $62,000; a sum more than sufficient to pay all the debts due to said mortgagees; that Cannon, after the transfer of said boat to him, gave possession of her to Wm. Fagan and others, a committee representing the mortgage creditors, who were authorized to employ the master and clerk. The bill further alleged, that on the 23d of January, 1875, Cannon transferred said boat by bill of sale to said committee, for the nominal consideration of $68,377, but the committee paid nothing for her, and merely took the title to enable them to sell said boat and appropriate the proceeds; that the admiralty sale was null and void, and that before and since the sale, the said boat had been held by the said several parties for account of said mortgage creditors, and that said committee received the title to said boat and held the same in payment of their pretended mortgage. The bill further alleged that Wm. Fagan, Edward Connery, D. C. McCan and P. G. Bigley, members of said committee, had undertaken to sell said boat to Mrs. Mary Tobin, but that the consideration money paid by Mrs. Tobin was still in the hands of Fagan, Connery and McCan, three of the committee, who had not yet paid it over to the mortgage creditors.

The prayer of the bill was, that the mort-

gages made by White and Miles Owen might be declared fraudulent and annulled; that the sale of the boat made January 11, 1873, by the admiralty court, and the subsequent sales might be annulled, and Miles Owen adjudged to be the owner thereof; and that complainant might have a decree for the amounts claimed in his bill against Miles Owen and J. Pinckney Smith, and that the Katie might be subjected to said claims and sold to satisfy the same, or in the event that the sale to Mrs. Tobin had been consummated, that a decree in favor of complainant for the proceeds of said sale might be rendered against Fagan, Connery and McCan, and that the claims of said mortgage creditors on said steamer might be rejected; and for an injunction against Fagan, Connery and McCan, to restrain them from paying over the proceeds of the sale to the mortgage creditors, or if the sale to Mrs. Tobin had not been perfected that they might be restrained from making the same, or any other sale or disposition of said steamer.

The cause was heard upon a motion for the preliminary injunction, according to the prayer of the bill.

Thomas Hunton, for complainant.

Wm. M. Randolph and B. Egan, for defendants.

WOODS, Circuit Judge. The obvious objection to the prayer for injunction is that there is no equity in the bill and on demurrer it would be dismissed. It is a creditor's bill seeking to subject property of the debtor fraudulently conveyed and covered up to the payment of the complainant's claims. An indispensable requisite to such a bill is that the claims upon which it is based should have been first put in judgment. There is no averment in the bill that this has been done. The bill is predicated on certain drafts alleged to have been drawn by one Miles Owen, and accepted by J. Pinckney Smith and transferred to complainant, but which have never, so far as appears, been reduced to judgment. This is a fatal defect in the bill. The complainant does not set up or claim any lien upon the property which he seeks to subject to the payment of his debt. He has simply a debt which he can sue on at law. Until he has exhausted his remedy at law by the recovery of a judgment, equity has no jurisdiction. Non constat but that on an execution he might make his money. Jones v. Green, 1 Wall. [68 U. S.] 330; Beck v. Burdett, 1 Paige, 305; McElvain v. Willis, 9 Wend. 548; Crippen v. Hudson, 3 Kern. [13 N. Y.] 161. But even if this defect in the bill did not exist, I should be constrained to overrule the motion. The answer of Fagan, Connery and McCan traverses every allegation of fraud made in the bill, and with the affidavits filed, shows that the claim of the mortgage creditors upon the boat was honest and fair, and the amounts claimed by them justly due.

The averment of the bill that the admiralty sale of the Katie was void is entirely without

proof to support it. It appears that before the libel the Underwriters Wrecking Company was dismissed, other creditors of the Katie intervened and it was upon their claims she was sold. The sale was made in pursuance of a decree of the court of admiralty. There is no proof and in fact no averment that it was unfairly obtained. This sale cuts off all claims of creditors and of the original builders or proprietors of the boat. The purchasers at that sale had the right to place the title where they pleased and to do with the boat as they pleased. There seems to be not the slightest proof of any fraudulent practices on the part of the mortgage creditors of the Katie. They were vigilant and looked after their own interests. The creditors, whose evidences of debt complainant holds, slept on their claims, and two years after a sale of the Katie under an admiralty decree, this bill is filed. The case has no basis to stand on, either upon the law or the facts. Motion for injunction overruled.