## SHAPIRO *v.* WILGUS ET AL., RECEIVERS.

No. 40.   Argued November 10, 1932.—Decided December 5, 1932.

*Mr. Jacob Weinstein* for petitioner.

*Mr. Sidney E. Smith* for the respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The petitioner, a judgment creditor of Herbert P. Robinson, made application in due form to a United States

District Court in Pennsylvania praying that leave be granted him to levy an execution upon property in the possession of receivers appointed by that court. An order refusing such leave was affirmed by the Circuit Court of Appeals for the Third Circuit. 55 F. (2d) 234. The case is here on certiorari.

From the record and the admissions of counsel these facts appear. Herbert P. Robinson was engaged in business in Philadelphia as a dealer in lumber. He was unable to pay his debts as they matured, but he believed that he would be able to pay them in full if his creditors were lenient. Indeed, he looked for a surplus of $100,000 if the business went on under the fostering care of a receiver. Most of the creditors were willing to give him time. Two creditors, including the petitioner, were unwilling, and threatened immediate suit. Thus pressed, the debtor cast about for a device whereby the business might go on and the importunate be held at bay. He had to reckon with obstructions erected by the local law. The law of Pennsylvania does not permit the appointment of a receiver for a business conducted by an individual as distinguished from one conducted by a corporation or a partnership. *Hogsett* v. *Thompson,* 258 Pa. St. 85; 101 Atl. 941. To make such remedies available there was need to take the title out of Robinson and put it somewhere else. The act responded to the need. On January 9, 1931, the debtor brought about the formation of a Delaware corporation, the Miller Robinson Company. On the same day he made a conveyance to this company of all his property, real and personal, receiving in return substantially all the shares of stock and a covenant by the grantee to assume the payment of the debts. Three days later, on January 12, 1931, in conjunction with a simple contract creditor, he brought suit against the Delaware corporation in the federal court, invoking the jurisdiction of that court on the ground of diversity of

citizenship. The bill of complaint alleged that creditors were pressing for immediate payment; that one had entered suit and was about to proceed to judgment; that the levy of attachments and executions would ruin the good will and dissipate the assets; and that the business, if protected from the suits of creditors and continued without disturbance could be made to pay the debts and yield a surplus of $100,000 for the benefit of stockholders. To accomplish these ends there was a prayer for the appointment of receivers with an accompanying injunction. The corporation filed an answer admitting all the averments of the bill and joining in the prayer. A decree, entered the same day, appointed receivers as prayed for in the complaint, and enjoined attachments and executions unless permitted by the court. Four days thereafter, on January 16, 1931, the petitioner began suit against Robinson in the Court of Common Pleas, and on February 4, 1931, recovered a judgment against his debtor for $1,007.65 upon a cause of action for money loaned. On February 26, 1931, he submitted a petition to the United States District Court in which he charged that the conveyance from Robinson to the corporation and the ensuing receivership were parts of a single scheme to hinder and delay creditors in their lawful suits and remedies, and he prayed that he be permitted to issue a writ of *fieri facias* against the chattels in the possession of the receivers and to sell them so far as necessary for the satisfaction of his judgment. The petition was denied, and the denial affirmed upon appeal.

The conveyance and the receivership are fraudulent in law as against non-assenting creditors. They have the unity of a common plan, each stage of the transaction drawing color and significance from the quality of the other; but, for convenience, they will be considered in order of time as if they stood apart. The sole purpose of the conveyance was to divest the debtor of his title and

354

put it in such a form and place that levies would be averted. The petition to issue execution and the answer by the receivers leave the purpose hardly doubtful. Whatever fragment of doubt might otherwise be left is dispelled by the admissions of counsel on the argument before us. One cannot read the opinion of the Court of Appeals without seeing very clearly that like admissions must have been made upon the argument there. After a recital of the facts the court stated in substance that the aim of the debtor was to prevent the disruption of the business at the suit of hostile creditors and to cause the assets to be nursed for the benefit of all concerned. Perceiving that aim and indeed even declaring it, the court did not condemn it, but found it fair and lawful. In this approval of a purpose which has been condemned in Anglo-American law since the Statute of Elizabeth (13 Eliz., ch. 5), there is a misconception of the privileges and liberties vouchsafed to an embarrassed debtor. A conveyance is illegal if made with an intent to defraud the creditors of the grantor, but equally it is illegal if made with an intent to hinder and delay them. Many an embarrassed debtor holds the genuine belief that if suits can be staved off for a season, he will weather a financial storm, and pay his debts in full. *Means* v. *Dowd,* 128 U. S. 273, 281. The belief, even though well founded, does not clothe him with a privilege to build up obstructions that will hold his creditors at bay. This is true in Pennsylvania under the Uniform Fraudulent Conveyance Act, which became a law in that state in 1921. Purdon's Pennsylvania Digest, Title 39, § 357. It is true under the Statute of Elizabeth (13 Eliz., ch. 5) which, in any case not covered by the later act, is still the governing rule. Purdon's Pennsylvania Digest, Title 39, § 361; *McKibbin* v. *Martin,* 64 Pa. St. 352, 356; *Stern's Appeal,* 64 Pa. St. 447, 450. Tested by either act, this conveyance may not stand. *Hogsett* v. *Thompson, supra; Mont-*

*gomery Web Co.* v. *Dienelt,* 133 Pa. St. 585; 19 Atl. 428; *Atlas Portland Cement Co.* v. *American Brick & Clay Co.,* 280 Pa. St. 449; 124 Atl. 650; *In re Elletson Co.,* 174 Fed. 859, affirmed 183 Fed. 715; *Kimball* v. *Thompson,* 4 Cush. 441, 446; *Dearing* v. *McKinnon Dash Co.,* 165 N. Y. 78; 58 N. E. 773; *Means* v. *Dowd, supra.*

The conveyance to the corporation being voidable because fraudulent in law, the receivership must share its fate. It was part and parcel of a scheme whereby the form of a judicial remedy was to supply a protective cover for a fraudulent design. *Harkin* v. *Brundage,* 276 U. S. 36; *Decker* v. *Decker,* 108 N. Y. 128, 135, 15 N. E. 307. The design would have been ineffective if the debtor had been suffered to keep the business for himself. *Hogsett* v. *Thompson, supra.* It did not gain validity when he transferred the business to another with a capacity for obstruction believed to be greater than his own. The end and aim of this receivership was not to administer the assets of a corporation legitimately conceived for a normal business purpose and functioning or designed to function according to normal business methods. What was in view was very different. A corporation created three days before the suit for the very purpose of being sued was to be interposed betweeen its author and the creditors pursuing him, with a restraining order of the court to give check to the pursuers. We do not need to determine what remedies are available for the conservation of the assets when a corporation has been brought into existence to serve legitimate and normal ends. Ordinarily a creditor who seeks the appointment of receivers must reduce his claim to judgment and exhaust his remedy at law. The Uniform Fraudulent Conveyance Act may have relaxed that requirement in many of the states (Purdon's Pennsylvania Digest, Title 39, §§ 351, 359, 360; cf. New York Debtor and Creditor Law, Article 10; Consol. Laws, c. 12; *American Surety Co.*

v. *Conner*, 251 N. Y. 1; 166 N. E. 783), but the rule in the federal courts remains what it has always been. *Pusey & Jones Co.* v. *Hanssen*, 261 U. S. 491, 497; *Scott* v. *Neely*, 140 U. S. 106; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 379; *Matthews* v. *Rodgers*, 284 U. S. 521, 529. True indeed it is that receivers have at times been appointed even by federal courts at the suit of simple contract creditors if the defendant was willing to waive the irregularity and to consent to the decree. This is done not infrequently where the defendant is a public service corporation and the unbroken performance of its services is in furtherance of the public good. *Re Metropolitan Railway Receivership*, 208 U. S. 90, 109, 111. It has been done at times, though the public good was not involved, where legitimate private interests might otherwise have suffered harm. *United States* v. *Butterworth-Judson Corp.*, 269 U. S. 504, 513; *Krugsport Press* v. *Brief English Systems*, 54 F. (2d) 501; *Harkin* v. *Brundage, supra*, p. 52. We have given warning more than once, however, that the remedy in such circumstances is not to be granted loosely, but is to be watched with jealous eyes. *Michigan* v. *Michigan Trust Co.*, 286 U. S. 334, 345; *Harkin* v. *Brundage, supra*. Never is such a remedy available when it is a mere weapon of coercion, a means for the frustration of the public policy of the state or the locality. It is one thing for a creditor with claims against a corporation that is legitimately his debtor to invoke the aid of equity to conserve the common fund for the benefit of himself and of the creditors at large. *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 380. Whatever hindrance and delay of suitors is involved in such a remedy may then be incidental and subsidiary. It is another thing for a debtor, coöperating with friendly creditors, to bring the corporation into being with the hindrance and delay of suitors the very aim of its existence. The power to intervene before the legal

remedy is exhausted is misused when it is exercised in aid of such a purpose. Only exemplary motives and scrupulous good faith will wake it into action.

The receivership decree assailed upon this record does not answer to that test. We have no thought in so holding to impute to counsel for the debtor or even to his client a willingness to participate in conduct known to be fraudulent. The candor with which the plan has been unfolded goes far to satisfy us, without more, that they acted in the genuine belief that what they planned was fair and lawful. Genuine the belief was, but mistaken it was also. Conduct and purpose have a quality imprinted on them by the law.

There remains a question of procedure. The prayer of the petitioner was that he be permitted to issue execution upon his judgment in the state court. Cf. *Wiswall* v. *Sampson*, 14 How. 52. If there had been any substantial doubt that the conveyance and the receivership were voidable obstructions, the federal court might have refused to permit the tangle to be unraveled in the courts of the state. It might have retained the controversy in its own grasp and made a decision for itself. But in truth there was no substantial doubt as to the quality of conveyance and receivership, no genuine issue to be tried. In such circumstances the petitioner was entitled to an order in the alternative either for the payment of his judgment out of the assets in the hands of the receivers or in default thereof for leave to issue execution. The refusal to grant relief in one or other of these forms is a departure from the bounds of any legitimate discretion which is not without redress.

The decree is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*