## In re GRIGSBY–GRUNOW CO.

### DWIGHT BROS. PAPER CO. et al. v. GRIGSBY–GRUNOW CO.

#### No. 5199.

Circuit Court of Appeals, Seventh Circuit.
Dec. 6, 1934.

Julius Moses, Lewis E. Pennish, and Seymour A. Greenblatt, all of Chicago, Ill., for appellants.

Isaac B. Lipson, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This controversy arises out of the District Court's ruling in dismissing appellants' amended petition to declare appellee a bankrupt. The appeal is based upon the court's alleged errors in (1) proceeding with the hearing before appellee had filed an answer; (2) refusing to grant petitioning creditors' motions for a continuance; (3) failing to find that appellee was guilty of the alleged acts of bankruptcy; (4) finding that there was no evidence of insolvency and collusion; and (5) dismissing appellee's petition.

On November 23, 1933, P. R. Mallory and Company, Inc., an unsecured simple contract creditor of appellee, filed a bill in equity against appellee, praying for the appointment of a receiver or receivers. Some time prior to that date appellee and its counsel had knowledge that the bill would be filed on that date and consented thereto. On the morning of November 24, appellee by its counsel appeared in court, waived notice, filed its answer admitting the allegations of the bill and joined in the prayer for the appointment of receivers, and suggested the appointment of appellee's vice-president, LeRoi J. Williams, as receiver or co-receiver. The bill alleged that appellee was solvent but unable to pay its maturing debts and obligations in the regular course of business and that an attempt to convert its assets into cash for meeting its maturing obligations would result in the destruction of the corporation as an operating unit, and great loss to all of its creditors. The court appointed Thomas L. Marshall and LeRoi J. Williams as co-receivers on November 24, 1933, and they thereupon went into possession of all of appellee's assets and continued in possession until after the trial and judgment in this action. The name of Thomas L. Marshall was selected by the court without suggestion from any one.

Following the appointment of the receivers, but on the same day, Joseph H. Tigerman, Dwight Brothers Paper Company, and Lammert and Mann Company, filed their verified petition, No. 54479, in the same court, asking that appellee be declared a bankrupt. They alleged that they were creditors of appellee with provable claims in the respective amounts of $26,250, $204.85, and $20.40; that appellee was insolvent, and while insolvent and within four months next preceding the filing of their petition, with intent to create preferences over general creditors, it had paid certain general creditors sums of money and made preferential transfers to them. It alleged that the names of such preferred creditors, the dates of payments and transfers, and the amounts thereof were unknown to petitioners. It further alleged that the officers of appellee were appropriating funds to their own use thereby circumventing the payment of other creditors.

On December 1, 1933, that petition was amended by adding the Chicago Vitreous Enamel Product Company as a petitioning creditor whose provable claim was alleged to be $1,851.02. Thereupon the court set the petition for hearing on December 12, 1933.

On December 1, 1933, Consolidated Wire and Associated Corporations, Accurate Spring Manufacturing Company, and Sam Wennerstrand and Gus Ackerman, co-partners doing business as Keystone Metal Cabinet Company, also filed a petition, No. 54,-550 in the same court asking that appellee be declared a bankrupt. Their petition alleged that they were creditors of appellee with provable claims in the respective amounts of $509.25, $172.42, and $362; that appellee was insolvent, and while knowingly insolvent, with intent to prefer a creditor, it paid to Effengee Electric Company of Chicago, in the month of November, 1933, the sum of $2,400, for the purpose of preferring that creditor above petitioners and appellee's other creditors. It further alleged that while appellee was insolvent and knowing that fact it permitted receivers to be appointed in the Equity Court for all of its assets.

On December 7, 1933, petitioners in bankruptcy cause No. 54550 filed their petition asking that the first petition in bankruptcy, No. 54479, be stricken from the records because demurrable, and that the hearing be had in cause No. 54550. They further stated that counsel for all the petitioning creditors were agreed that this should be done and that the petitioners in No. 54479 should be permitted as intervening petitioners to join in the petition in cause No. 54550. The court thereupon ordered cause No. 54550 to be consolidated with cause No. 54479. On the same day appellee filed its answer to the petition in No. 54479, moving that certain portions be stricken, and denying insolvency and preferential payments, and also denying any indebtedness whatever to Tigerman.

On December 11, 1933, appellee filed its answer in cause No. 54550 denying insolvency when the receivers were appointed, and when the claim of the Effengee Electric Company was paid. It admitted the payment but denied any intent to prefer the creditor. On the same day the petitioners in both causes filed a joint motion to continue the hearing of the consolidated causes until after December 27, 1933. The record discloses the following colloquy:

"The Court: The Court's view is: If I should grant this motion I would do what apparently is done under all the circumstances. My observation is that in the usual course, when some concern gets into shaky circumstances, somebody gets three creditors, alleges that it preferred some creditor without name, and then the alleged bankrupt is harassed until he is finally harassed long enough that he is a bankrupt. Now, in this particular case, the petition for alleging bankruptcy has been filed. We will have the hearing, and have it promptly. We will have the hearing tomorrow. If this is a bankrupt, we will adjudicate it. Your motion for continuance is denied.

"Mr. Pennish: I cannot possibly get ready so soon.

"The Court: You just ask the bankrupt to bring in what we may be advised is profitable. I will charge your client for the expense of bringing in anything you do not need.

"Mr. Pennish: No issue is raised yet, and as I pointed out to your Honor, as a matter of law, we cannot go to trial.

"The Court: I held the other Petition was returnable some days ago. It has been set for hearing tomorrow. It will start at that time, or as soon thereafter as the Court can get to it. Your Petition is consolidated with the one which has been filed, the record shows.

"Mr. Pennish: It will take some time. If you will give us ten days or two weeks.

"The Court: Tomorrow. We are going to get rid of one bankruptcy proceeding in this court, and get through as quickly as we can."

The cause was not heard on December 12, and on December 15, appellants asked leave

to amend the petition. By leave of court, granted on December 20, the amended petition was filed on the same day. The claim of Tigerman was eliminated in the amended petition in which the other six claimants joined. It alleged that appellee was insolvent, and owed debts in excess of $5,500,000; it charged an act of bankruptcy with relation to the Effengee Electric Company claim, as set forth in the former petition; it further charged that the equity receivership was a result of collusion between appellee and its creditors, Mallory and Company, Incorporated, for the purpose of hindering and delaying the other creditors, which in fact amounted to a fraudulent transfer of its assets while insolvent, and also amounted to a general assignment for the benefit of appellee's creditors. On the same day a part of the evidence was heard, and the balance the following day, December 21, and the court continued the cause for decision until December 23. At the conclusion of the evidence on December 21, appellee filed its answer to the last amended petition, without objection on the part of any of the appellants. The answer denied insolvency, collusion, fraudulent transfer of assets, preferential payment, intent to hinder or delay creditors, and general assignment for benefit of creditors. On December 23, the court found that appellee was not guilty of any of the alleged acts of bankruptcy; that there was no evidence that it was insolvent; that neither the equity proceedings nor the appointment of receivers was collusive, nor did they amount to a general assignment for the benefit of creditors, and that there was no evidence of any transfer of assets with intent to hinder and delay creditors. Judgment was thereupon entered dismissing the suit.

■ On July 30, 1934, appellee filed a verified petition in this court alleging that on February 17, 1934, a petition in bankruptcy against appellee was filed in the District Court; that upon default of appellee an adjudication was entered on March 13, 1934, and a trustee was appointed on April 16, 1934, and since the last named date he has continuously acted as such trustee, and said bankruptcy proceedings are still pending and undisposed of. Hence appellee says that the questions involved in this appeal are moot and it moves to dismiss the appeal. The motion is overruled for the reason that if appellants' contentions are sound with respect to the questions raised by the appeal, the time for recovering unlawful preferences, if any, would be extended back as far as July 24, 1933, where-

as under the existing adjudication that right would exist only for preferences, if any, since October 17, 1933. Hence it becomes necessary to determine the questions raised by the appeal.

■ We think there was no error in overruling petitioners' motion for a continuance. The statement of the court with respect to its reasons for denying a continuance are explanatory of the unfair practices which it thought generally prevailed with respect to bankruptcy proceedings, and it was justified in exercising all reasonable means in preventing them. The trial court is in a much better position than any one else to determine whether such conditions exist, and it is to be given a wide discretion in accomplishing an expeditious administration of its duties. Appellee was an enormous concern having assets of the book value of many millions of dollars, and a book showing of an excess of assets over liabilities of at least ten million dollars. The receivers were in charge of the business and were running it, and there was every reason why it should not be interfered with except for good cause shown. It is quite true that the original and the amended petitions alleged insolvency and that would have been a good reason for sustaining appellants' contentions if proven. But appellants contend that it was impossible to prove it unless they were given an opportunity to examine the books which their examiners said would require from two to three months. If they were unable to prove insolvency without such an extended examination, it is rather difficult to understand why they could positively swear to that fact when their petitions were filed. The creditors named in the first petition had access to the books for twenty-six days before the trial and those of the second petition had the same opportunity for twenty days, and yet they were unable to produce evidence aside from presumptions, to warrant the court in finding that appellee was insolvent. The result tended quite strongly to prove the court's statement when it overruled the first motion for a continuance, and we think there was no error in its ruling in this respect. Aside from the question of solvency it is obvious that further time was not necessary to prove the allegations of the amended petition or to disprove the allegations of the answer. The fact that the time for the alleged bankrupt to plead to the amended petition had not expired at the time the hearing was commenced under the statute and equity rules was not a matter of which appellants could complain.

It is contended by appellants, however, that the court should have presumed the insolvency of appellee and should have cast the burden upon it of proving solvency, because (1) there was no answer filed until the evidence was concluded, and (2) the alleged bankrupt did not appear in court on the hearing with its books, papers and accounts, submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency, as required under section 3 (d) of the Bankruptcy Act 11 USCA § 21 (d).

■ Appellee promptly filed its answer to all petitions except the last amended petition. In those answers it denied insolvency, the preference of any creditor, and the transfer of any assets with intention to hinder or delay any creditor, where those facts were alleged. On the morning of the trial the case was at issue, and the court then permitted appellants to file their last amended petition. It was immediately filed and the introduction of evidence by appellants was begun. Their evidence was concluded on the following day and appellee thereupon filed its answer but introduced no evidence. The answer raised no new issue, but was in effect a demurrer to or denial of the allegations of the amended petition. Appellants made no objections to the filing of the answer and at no time after the amended petition was filed did they suggest to the court that the case was not at issue, or that the burden of establishing solvency was cast upon appellee. So far as the record discloses appellants voluntarily assumed the burden of proving insolvency. They proceeded on the theory that the answer was filed and they raised the question for the first time in this court. There is no merit in this contention.

■ The record does not disclose that appellee's books, papers and accounts were not in court. Indeed they were at all times herein referred to in possession of the court for they were in the hands of the receivers who were its officers, and for this reason appellee could not have produced them. It is not claimed that appellants were ever refused access to the books, papers and accounts, or that they ever made complaint to the court in that respect. Nor did they ever ask that appellee submit itself to examination as provided by statute. Being a corporation it had to speak through its officers. Mr. Williams, the executive vice-president, and Mr. Mecklenburger, director and general counsel of appellee, appeared in court and submitted to an examination by appellants' counsel, and appellants made no effort to examine the other officers or employees

of appellee. Under these circumstances we think there was no violation of the statute, 11 USCA § 21 (d).

■ It is further contended by appellants that collusive or friendly receiverships have the effect of hindering and delaying creditors, and are fraudulent in law. This we think states the rule too broadly. Such conduct may, and oftentimes does have that effect, but not always. In support of their proposition appellants cite First National Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391. However, in that case there was fraud present in the sale price of the assets of the old corporation to the new corporation which was organized for the very purpose of taking over the assets at an agreed price in order to hinder and delay the creditors of the old corporation. Appellants also cite Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 144, 77 L. Ed. 355, 85 A. L. R. 128. That case quite clearly lays down the correct rule, and it is not nearly so broad as appellants' have stated it. Mr. Justice Cardozo, speaking for the Court says:

"* * * True indeed it is that receivers have at times been appointed even by federal courts at the suit of simple contract creditors if the defendant was willing to waive the irregularity and to consent to the decree. This is done not infrequently where the defendant is a public service corporation and the unbroken performance of its services is in furtherance of the public good. * * * It has been done at times, though the public good was not involved, where legitimate private interests might otherwise have suffered harm. [Citing cases.] We have given warning more than once, however, that the remedy in such circumstances is not to be granted loosely, but is to be watched with jealous eyes. * * * Never is such a remedy available when it is a mere weapon of coercion, a means for the frustration of the public policy of the state or the locality. It is one thing for a creditor with claims against a corporation that is legitimately his debtor to invoke the aid of equity to conserve the common fund for the benefit of himself and of the creditors at large. * * * Whatever hindrance and delay of suitors is involved in such a remedy may then be incidental and subsidiary. It is another thing for a debtor, co-operating with friendly creditors, to bring the corporation into being with the hindrance and delay of suitors the very aim of its existence."

The record discloses that this case comes within the first class referred to by Justice Cardozo, rather than the second. It is not

denied that the evidence admitted did not show insolvency. On the other hand, it showed a substantial surplus, but inability to meet current liabilities because of stress of commercial conditions. It may be admitted that there was cooperation with a friendly creditor in the institution of the equity proceeding for the appointment of receivers, but the same sort of proceeding had previously been contemplated by at least one other creditor who later consented to the institution of the suit by Mallory and Company, and the record discloses nothing to support an inference that the suit was brought for the purpose of hindering or delaying any creditor. Under these conditions we are convinced that the District Court was not in error in holding that the equity proceeding did not constitute such a transfer of assets as to amount to an act of bankruptcy, nor was there error in holding that these proceedings did not amount to a general assignment for the benefit of appellee's creditors within the purview of section 3 of the Act of May 27, 1926, amending Bankr. Act, § 3a (11 USCA § 21 (a), because insolvency was not proven. In support of the proposition that the appointment of the receiver under the conditions here present amounted to a general assignment for the benefit of creditors, appellants rely upon Bramwell v. U. S. Fidelity & Guaranty Company, 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; United States v. Butterworth-Judson Corporation, 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380. These cases have to do with the construction of section 3466 of the Revised Statutes, 31 USCA § 191, which provides for a preference of debts due the United States from an insolvent debtor. It further provides that " * * * the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof. * * *" In those cases the Court stresses the fact that the particular statute involved is given a liberal construction in view of its purpose and history. The Government in those cases contended that section 3466, supra, should be given a more liberal construction than that which had theretofore been accorded the Bankruptcy Act. The Attorney General's argument in this respect in the Butterworth-Judson Case (pages 506, 507 of 269 U. S., 46 S. Ct. 179) is quite cogent:

"Under the original Bankruptcy Act of 1898, a general assignment was an 'act of bankruptcy,' even if the debtor was solvent.

Therefore, if a 'consent receivership' had been held equivalent to a general assignment, such 'consent receivership' would have been an act of bankruptcy, though the debtor were perfectly solvent, but only temporarily embarrassed; and solvent concerns could have been thrown into bankruptcy and wound up. Such a construction of the Bankruptcy Act would have stopped all 'consent receiverships,' and the courts frequently held that as the Bankruptcy Act was passed for the benefit of debtors, and was in derogation of the common law, it should be strictly construed and that 'consent receiverships' were not equivalent to a general assignment, and hence not acts of bankruptcy.

"On the other hand, the priority statute was based on public policy, was declaratory of the common law, and was passed for the benefit of the United States. It should be liberally construed. United States v. State Bank of North Carolina, 6 Pet. 29 [8 L. Ed. 308]. Under section 3466 it is necessary, not only that there should be a 'voluntary assignment,' i. e., a 'consent receivership,' but there must be also insolvency in the bankruptcy sense. The courts should give a liberal construction to the phrase 'voluntary assignment,' so as to hold that a 'consent receivership' is the equivalent to a 'voluntary assignment.' * * *"

The Court in those cases adopted the Attorney General's construction of section 3466, and in Shapiro v. Wilgus, supra, it adhered to the prior construction of the Bankruptcy Act, that is to say that the appointment of receivers in an equity proceeding is not an act of bankruptcy unless the debtor is insolvent. It is also worthy of note that in the Bramwell and Butterworth-Judson cases, as well as in New York v. Maclay, 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754, which was a case of the same nature, the debtors were insolvent, and in the Price case the debtor was in failing circumstances and was found to be insolvent within a short time after the receiver was appointed.

Appellants argue that because there was an adjudication in bankruptcy under a petition filed after theirs, this court should reverse the order of the District Court and remand the case to it with instructions to enter an order of adjudication on their petition, and consolidate the two causes. We think, however, that under the facts herein involved, where no error was shown in the action of the court in dismissing the first petition, and that action was final, appellants are not entitled to the benefit of the subsequent action, and to

have their petition, already dismissed, consolidated with the later one.

We find no error in the record and the decree is sustained.