## LEFKOWITZ v. FINKELSTEIN TRADING CORPORATION et al.

District Court, S. D. New York.
Jan. 3, 1936.

Abraham H. Sarasohn, of New York City, for plaintiff.

James Charles Myers, of New York City, for defendants.

PATTERSON, District Judge.

The suit is by the trustee in bankruptcy of Finkelstein Hardware Corporation to set aside alleged transfers in fraud of creditors. The bankrupt was a corporation engaged in the retail hardware business, and was owned and managed by one Max Finkelstein. An involuntary petition in bankruptcy was filed against it on March 8, 1933. The transfers charged in the bill are of two types. The first is covered by the allegation that the bankrupt from time to time transferred merchandise to Finkelstein, doing business as Sun Range & Stove Company, without consideration and in fraud of creditors. There was a failure of proof with respect to transfers to the Sun Company. Nothing beyond vague suspicion was brought forward, and the case as to this feature must be dismissed.

The second alleged transfer is one that arose from a sale on execution. In November, 1932, one Lewson obtained judgment against the bankrupt in the sum of $387, for goods sold and delivered. A marshal of the municipal court levied execution on the entire contents of the bankrupt's store. While the value of the property so levied on was disputed, I am convinced that the fixtures had a fair market value of at least $1,000 and the stock in trade a fair market value of not less than $4,000. The marshal left a custodian in charge. Business went on as usual after the levy, except that the custodian took the cash receipts. At the execution sale, held on December 5, 1932, the property was knocked down in bulk to one Kessler for $430, barely enough to pay the judgment and expenses of sale. Kessler was a friend of Finkelstein. He made the purchase at the request of Finkelstein's sons and daughter. On the same day Kessler sold the property to the daughter for $500. A few days later the daughter transferred the property to a new corporation, Finkelstein Trading Corporation, of which Finkelstein was president and his sons and daughter

were the stockholders. Some months later this corporation transferred the assets to still another corporation, Cranes Square Supply Company, Inc., owned and managed by one of the sons. The marshal's sale was not advertised, beyond notices put up in court and in marshals' offices, and very few were present at the sale. None of the creditors except Lewson knew of the sale.

The Lewson judgment was an honest one, and there is nothing to indicate collusion between Lewson and the Finkelsteins. Lewson got no more than a preference. But it cannot be doubted that the Finkelsteins, after the levy was made, determined to take advantage of it and to purchase the assets at a sacrifice, shaking off the creditors and carrying on the business the same as before. The result was that on an outlay of $500 they obtained fixtures and merchandise worth tenfold that figure, and the bankrupt, with liabilities of $15,000, was stripped of every item of property. To the extent that the value of the property so obtained exceeded the price paid for it, the transaction was one to hinder, delay, and defraud creditors of the bankrupt.

A conveyance by an insolvent debtor is not saved merely because the form of a judicial remedy is followed. Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128. A transfer effected on execution sale may be as fraudulent on creditors as a transfer made by the debtor's own volition, where the effect is to hinder, delay, and defraud creditors. Crary v. Sprague, 12 Wend. (N.Y.) 41, 27 Am.Dec. 110; Decker v. Decker, 108 N.Y. 128, 15 N.E. 307. Here the bankrupt's entire property was quietly purchased on execution sale by the family of the sole stockholder at a small fraction of the fair value, leaving nothing for creditors. The transaction was void as to creditors, both under the statute of 13 Elizabeth and under the New York enactment of the Uniform Fraudulent Conveyance Act (Debtor and Creditor Law [Consol.Laws, c. 12], art. 10).

It is of significance that all the books of the bankrupt corporation vanished in the three months between execution sale and bankruptcy. The Finkelsteins had custody of them, but have no explanation to offer as to their whereabouts. Beyond doubt, they were secreted or destroyed. As the books would have shed light on the value of the property transferred, their

disappearance must be taken as evidence against the defendants on this issue. National Bank of Republic v. Hobbs (C.C.) 118 F. 626.

The case will be dismissed as to Sun Range & Stove Company, Inc., and as to Kessler. With respect to the latter, there is nothing to show that he was cognizant of the value of the property acquired on the execution sale. As to the remaining defendants, there will be a decree adjudging the transfer void and holding them liable to the plaintiff in the sum of $4,500.