**HILLIARD v. SISIL.**

No. 12738.

United States Court of Appeals
Ninth Circuit.

Oct. 27, 1951.

Rehearing Denied Jan. 2, 1952.

F. M. Bistline, R. Don Bistline, Pocatello, Idaho, for appellant.

B. W. Davis, Pocatello, Idaho, for appellee.

Before BONE and ORR, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Chase was in the used car and trailer business for several years. William H. Musselman invested in the business of Chase by purchasing "Jesse M. Chase Investment Certificates," which were promissory notes signed by Chase personally. On January 1, 1947, Chase transferred the whole business, of an alleged net worth over $175,000.00, to a corporation, "Jesse M. Chase, Inc.", for which common stock of par value of $164,000.00 was issued to Chase. The balance was subsequently accounted for in additional stock issue and paid in surplus. Chase, Hubble and Nelson, the incorporators, each purchased one share of stock for $100.00, and paid for it in cash. On January 31, 1947, Hubble purchased 20 shares more, and turned in cash assets in that amount. Subsequently, $27,000.00 additional was invested by others in common and preferred stock of the corporation, which operated at a profit during its first year. Chase and wife turned in by warranty deed, dated February 10, 1947, four lots in Pocatello, upon which was a garage.

Mrs. Sisil obtained a judgment against Chase in the United States District Court for the District of Idaho in the sum of over $10,000.00, on the investment certificates which she received by devolution upon the death of her former husband, Musselman. Transcript of this judgment was filed in the office of the County Recorder of Bannock County, and levy was made on the real property above mentioned, as to the property of Chase, on October 31, 1949. At execution sale by the United States Marshal on November 26, 1949, Mrs. Sisil bid in this property for a nominal amount.

On November 5, 1949, appellant was appointed receiver of the corporation, which had sustained heavy business losses in the years 1948 and 1949. This action to quiet title to the real property in the corporation

was filed by him, as receiver, on November 16, 1949, in the state court and was removed to the federal court. Amended answer, including two affirmative defenses and a counterclaim in the nature of a creditor's bill, were filed by Mrs. Sisil. Pending trial, the receiver sold the property to C. C. Anderson Company. The receiver paid to the Marshal the amount of the nominal bill of Mrs. Sisil, together with interest and costs, in order to go through the formalities of redemption under state law, and also obtained a quitclaim deed from Chase.

The careful Trial Judge, Hon. Chase Clark, found that the transfer of the real estate to the corporation was without any consideration and that the moneys arising from the sale are held in trust for the payment of the judgment of Mrs. Sisil. It was further found that the corporation was organized solely for the benefit of Chase, and that he was, for practical purposes, the sole and only owner of the capital stock of the corporation, having used the names of a few of his employees for the purpose of complying with the corporation laws of the state, and that Chase remained the owner of the property transferred to the corporation. The findings recite further that the corporation assumed the payment of the investment certificates, including those transferred to Mrs. Sisil, but that the transfer of all the assets of Chase used in the car business was a fraud as to her, and that the corporation, of which Chase was president, manager and sole director, was fully advised and knew all of the facts and circumstances surrounding the purchase of the "Investor's Certificates," and accepted the transfer of the real estate with a knowledge that proceeds of the sale of certificates were invested in the assets of Chase. The Court also found that the judgment of Mrs. Sisil was and is a valid lien upon the par-

ticular real property and that Chase actively moved to put the corporation in receivership in order to put the assets of Chase, transferred to it, out of reach of Mrs. Sisil, and that there was no notice to defendant or any attempt to comply with the Bulk Sales law of the state.

The Trial Judge has thus found fraud, which was conceived before the transfer and which characterized all subsequent transactions. The attempted sale and transfer by Chase to a corporation organized solely by him, for his own benefit, was found to be a direct fraud on Mrs. Sisil, a prior creditor. The violation of the Bulk Sales Law of Idaho [1] was also a badge of fraud and was proper for the consideration of the Trial Court, even though the particular real estate was excluded from the purview of that statute. Once fraud is found, the taint is not washed from the res until there is a cleansing transfer thereof into the hands of a bona fide purchaser for value. But no such transfer is shown by this record. The corporation plainly had all the guilty knowledge which Chase possessed.[2] Therefore, it cannot masquerade as a bona fide purchaser for value. To all intents and purposes, Chase was the corporation, and a claim against him was a claim against it.[3] The attempt to create a transfer for value by a promise of the corporation to assume and agree to pay the prior debts is futile in view of the established fraudulent purpose. The findings of the Trial Court are supported by substantial evidence and, since no error appears, there is no reason to disturb them. The circumstances strongly point to an actual intent upon the part of Chase to delay and defraud creditors. In the presence of such an intent, the transferor need not even be insolvent, because the transaction is void against a prior creditor who perfects his claim by obtaining a judgment.[4] The evi-

1. Section 64–701 et seq., Idaho Code.
2. Seymour v. Boise Railroad Co., Ltd., 24 Idaho 7, 132 P. 427; James v. Stokes, 203 Ky. 127, 145, 261 S.W. 868.
3. See Noll v. Chattanooga Co., Ltd., Tenn. Ch.App., 38 S.W. 287.
4. "Every instrument, other than a will, affecting an estate in real property, including every charge upon real property, or upon its rents or profits, made with intent to defraud prior or subsequent purchasers thereof, or encumbrancers thereon, is void as against every purchaser or encumbrancer, for value, of the same property, or the rents or profits thereof." 55–901, Idaho Code.
   "Every transfer of property, or charge

dence shows Chase did not retain enough property to satisfy his debts. The judgment creditor has a right to proceed by a levy upon and sale of the real property standing in the name of the corporation which had, with fraudulent intent, been transferred to it by Chase.[5]

While a bona fide redemptioner, for value, without notice, would take title free from the lien of the Sisil judgment,[6] no such situation exists here. The Trial Judge found that the title was in Chase and was transferred in fraud of the creditor. The corporation held title in trust. The sale under the levy vested Mrs. Sisil with title subject to redemption. But the receiver was not an innocent party.[7] When he redeemed, he still held under the trust and subject to the lien of the judgment. He could not clear title by such an obvious subterfuge. The property was still that of Chase as against Mrs. Sisil and, when in the hands of the corporation, again was under the lien of the judgment by the Idaho statute.[8]

It is universally recognized that, under the systems of common law and equity from which our jurisprudence sprang, the creditor has no general right or title in the property of the debtor.[9] He had "no concern" with the property until he had acquired "a certain claim" against the debtor.[10] Traditionally, this claim could only be acquired by bringing his action and entering a judgment, because up until such a consummation he has "simply a debt upon which he can sue at law." "Without a judgment," a creditor "cannot pursue and get satisfaction out of the debtor's property." [11]

This rule still furnishes the classic mode, although there are now procedural shortcuts which need not be noticed on account of the fact that the debtor chose the conservative path. This course is the answer to the suggestion that the creditor ought to have joined the corporation which had gone through the form of assumption of the debt. Mrs. Sisil had the option of suing or joining the corporation, or, on the other hand, of pursuing the original debtor. No novation is found here. The creditor never had accepted the assumption.

By statute the judgment becomes a lien upon the land in most states, and did in Idaho when this judgment was rendered, if the land then had stood in the name of the judgment debtor. But, if the land has been transferred, a judgment creditor, if he question the good faith of the transaction, is again confronted with different openings for action. He may attack the transaction by filing a creditor's bill. Thereby the land and title thereto are subject to the jurisdiction of the Court, and, if the transfer be found fraudulent, the conveyance may be set aside and the property sold and the proceeds applied to the pay-

---

thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." 55–906, Idaho Code.

5. The Mode, Ltd. v. Myers, 30 Idaho 159, 165, 164 P. 91. See Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355.

6. Evans v. City of American Falls, 52 Idaho 7, 24, 25, 11 P.2d 363; Simpson v. Castle, 52 Cal. 644.

7. Shapiro v. Wilgus, 287 U.S. 348, 53 S. Ct. 142, 77 L.Ed. 355.

8. The judgment became a lien as soon as docketed and again seized the real property as soon as Chase was revested therewith by the action of the Receiver in redeeming from the insufficient bid. " * * * judgments in district courts of the United States, if rendered within this state, from the time they are docketed, become liens upon all the real property of the judgment debtor, * * * owned by such debtor at the time or which he may afterwards acquire, until the lien expires * * *." 10–1109, Idaho Code.

9. Stewart v. Fagan, C.C.La., Fed.Cas.No. 13,426, 2 Woods 215.

10. Chancellor Kent in Wiggins v. Armstrong, 2 Johns Ch., N.Y., 144.

11. Dawson Bank v. Harris, 84 N.C. 206, 210.

ment of the debt. But by far the most usual way has been for the creditor to disregard the transfer and levy directly upon the land by execution.

This was the method followed in the case at bar, and the course is justified by the decisions of the state courts.

The property was sold by the United States Marshal. As often happens, there were no other bidders, and the judgment creditor became the purchaser. It is notorious under these circumstances that the creditor bids only nominal value.

While this was going on, Chase apparently decided, since the corporation had suffered heavy losses subsequent to incorporation, that it would be better for him if his past and present creditors should share his assets pro rata. To that end, in any event, he addressed himself, and with his active cooperation a receiver for the corporation was appointed by the state court. But this device did not render the original transfer innocuous.[12] It is strongly urged that it would be inequitable for one creditor to gain a priority over others. But, if reversion be had to first principles above enunciated, it will be seen that in this field the law aids the vigilant creditor. By the judgment and the sale upon execution, Mrs. Sisil became a bona fide purchaser for value. The other creditors, who had no judgment and who had made no other attack, had an interest neither in the property of debtor generally nor in any specific property.

After this sale, the obligation of Chase and the corporation, if the transfer were a fraudulent one, was to pay the debt which was owing to Mrs. Sisil. But instead, the receiver decided to redeem. Under the statutes of Idaho, that could be done, and the purchaser was bound to accept the money which he bid and the land passed to the possession of the receiver.

■ One who is in possession of a parcel of land, claiming title, has the equitable right to bring suit to remove a cloud or to quiet title. These are in the nature of bills quia timet. Following such precedents, the receiver brought the instant case. Defendant, Mrs. Sisil, counterclaimed with a creditor's suit. Whatever may have been the position of the parties prior to the filing of this counterclaim, Mrs. Sisil, by virtue thereof, became vested with a lien on the specific property in a prior position to other creditors.

The Trial Court found the conveyance fraudulent and ordered it set aside and the proceeds upon sale applied to the satisfaction of the debt of Mrs. Sisil, less, of course, the amount received upon redemption. The findings were correct, were supported by substantial evidence, and were not in any respect erroneous.

The judgment granted appropriate relief and is affirmed.

---

12. Shapiro v. Wilgus, 287 U.S. 348, 53 S. Ct. 142, 77 L.Ed. 355, presents almost the exact situation. First National Bank v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L.Ed. 465; 1 Glenn, Fraudulent Conveyances and Preferences, Rev.Ed.1940, § 222.