752 A.2d 854 (2000)
Linda FIRMANI, Plaintiff-Respondent/Cross-Appellant,
v.
E. Dominic FIRMANI and Firmani Family Limited Partnership, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2000.
Decided June 20, 2000.
*855 Patricia L. Talcott, Cherry Hill, for defendants-appellants/cross-respondents (Kaplin Stewart Meloff Reiter & Stein, attorneys; Ms. Talcott, on the brief).
Adrienne Freya Jarvis, Cherry Hill, for plaintiff-respondent/cross-appellant.
Before Judges SKILLMAN and D'ANNUNZIO.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal requires us to consider the application of the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 to -33, to a conveyance of real property for the alleged purpose of hindering enforcement of the equitable distribution provisions of a judgment of divorce.
Defendants appeal from an amended summary judgment, entered on February 26, 1999, which vacated the conveyance from defendant E. Dominic Firmani (Firmani) to defendant Firmani Family Limited Partnership (Family Partnership) of real property located at 18 Grove Street in Haddonfield and revested title in Firmani. Plaintiff cross-appeals from an order entered on April 29, 1999 which denied her application for counsel fees.
This case is an outgrowth of a matrimonial action between plaintiff and Firmani. Pursuant to a settlement agreement between the parties entered into on December 12, 1991, which was later incorporated in a judgment of divorce, Firmani obtained sole ownership of the Haddonfield property, which had been jointly owned. In return, Firmani agreed to pay plaintiff $55,000, $30,000 of which was payable within thirty days and the balance within three years. Firmani paid plaintiff the $30,000 but failed to pay her the $25,000 balance. On motion by plaintiff, this obligation was reduced to a judgment.
Shortly before the expiration of the three-year period for paying plaintiff the remaining $25,000, Firmani established the Family Partnership and conveyed the Haddonfield property to this entity. The partnership agreement states that Firmani holds a one percent interest as the general partner of the Family Partnership and a ninety-four percent interest as a limited partner. Firmani's present wife, three children, and stepson received the remaining five percent interest in the Family Partnership in equal proportions as limited partners.
When Firmani conveyed the Haddonfield property to the Family Partnership, he had approximately $83,000 in equity in the property. In consideration for the conveyance, Firmani received one dollar from the Family Partnership.
*856 Firmani resides in the Haddonfield property with his present wife and also allegedly operates his financial planning business out of the home. A corporation owned by Firmani pays the $1500 per month mortgage obligation as well as the other expenses of the property.
Plaintiff brought this action to set aside the conveyance of the Haddonfield property on the ground that it was a fraudulent transfer designed to avoid enforcement of Firmani's obligation under the judgment of divorce to pay plaintiff an additional $25,000 and the subsequent order reducing that obligation to a money judgment. The matter was brought before the trial court on cross motions for summary judgment. At the argument before the trial court, defendants agreed that the case could "be decided on summary judgment." The trial court concluded that the conveyance was a transparent effort by Firmani to avoid his obligations to plaintiff by transferring legal title to the property to the Family Partnership entity while "still retaining the actual beneficial interest in the land," and vacated the conveyance. The court subsequently denied plaintiff's application for counsel fees.
On defendants' direct appeal, we affirm the summary judgment vacating the conveyance of the Haddonfield property to the Family Partnership. On plaintiff's cross appeal, we reverse the denial of her application for counsel fees and remand to the trial court for a determination of the amount of such fees.

I
N.J.S.A. 25:2-25(a) provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
a. With actual intent to hinder, delay, or defraud any creditor of the debtor....
N.J.S.A. 25:2-26 sets forth a non-exhaustive list of eleven factors, referred to as "badges of fraud," that a court may consider in determining whether a party has established an actual intent to hinder, delay, or defraud under N.J.S.A. 25:2-25(a):
a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
c. The transfer or obligation was disclosed or concealed;
d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
e. The transfer was of substantially all the debtor's assets;
f. The debtor absconded;
g. The debtor removed or concealed assets;
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
Regarding these factors, our Supreme Court has stated:
In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, courts generally look to factors commonly *857 referred to as "badges of fraud." "Badges of fraud" represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent.
....
The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.
"[F]raudulent intent, by its very nature, is rarely susceptible to direct proof...." Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 508 N.Y.S. 2d 17, 21 (1986), appeal dismissed, 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (N.Y.1987). A defendant rarely will acknowledge that she transferred funds to place them beyond the reach of creditors. Actual intent often must be established through inferential reasoning, deduced from the circumstances surrounding the allegedly fraudulent act.
....
We do not suggest that a court must find a specific number of factors before characterizing a transaction as fraudulent. In some cases, the presence of a single factor may suffice. Where several badges of fraud accompany one transaction, however, a strong inference of fraud arises. Unless a sufficient explanation is supplied, clearly rebutting the inference of actual fraudulent intent, the conclusion that the debtor possessed the requisite intent is inescapable.
[Gilchinsky v. National Westminster Bank, 159 N.J. 463, 476-77, 484, 732 A.2d 482 (1999) (citations omitted).]
We are satisfied that the undisputed facts show that Firmani's conveyance of the Haddonfield property to the Family Partnership manifested at least five of the "badges of fraud" set forth in N.J.S.A. 25:2-26. Defendant was the sole general partner and primary limited partner of the Family Partnership prior to the conveyance, and therefore the conveyance was made to an insider. N.J.S.A. 25:2-26(a); see Gilchinsky, supra, 159 N.J. at 478-79, 732 A.2d 482. By continuing to use the Haddonfield property as a residence and place of business, and as the sole general partner with a total ninety-five percent interest in the Family Partnership, defendant clearly retained possession or control of the property after the conveyance. N.J.S.A. 25:2-26(b). Firmani does not dispute that he was aware that the $25,000 had become due to plaintiff, and therefore he knew or should have known that absent voluntary payment, an enforcement action probably would be brought. N.J.S.A. 25:2-26(d). By putting plaintiff in a position where she could only recover the money owed through the Limited Partnership charging process, defendant "removed ... assets." N.J.S.A. 25:2-26(g); see Gilchinsky, supra, 159 N.J. at 479, 732 A.2d 482 ("[I]n transferring assets from New York to New Jersey [where more debtor-protective IRA laws exist], defendant effectively prevented them from being attached by [her creditor]."). Finally, because Firmani's obligation to pay the remaining $25,000 he owed plaintiff became due on December 12, 1994, the conveyance to the Family Partnership occurred shortly after a substantial debt was incurred. N.J.S.A. 25:2-26(j).
Defendants failed to present any substantial evidence to counter the strong inference of fraudulent intent established by these badges of fraud. Firmani submitted a certification which asserted that he established the Family Partnership and conveyed the Haddonfield property to this entity for "estate planning purposes." However, we are unable to discern from Firmani's certification how the transaction could have served any estate planning purposes, except by increasing the total amount of his estate by the $25,000 he seeks to avoid paying plaintiff and by the *858 amounts of the judgments that certain casinos have against him. In any event, N.J.S.A. 25:2-25(a) does not require that an intent to hinder, delay, or defraud a creditor be the exclusive motivation behind a transfer in order for the transfer to be deemed fraudulent.
Defendants also argue that "finally, and of greatest significance, the transfer did not deprive Ms. Firmani of assets sufficient to satisfy her judgment. The transfer merely changed the type of asset against which she could assert her lien." In Shapiro v. Wilgus, 287 U.S. 348, 354, 53 S.Ct. 142, 144, 77 L.Ed. 355, 358 (1932), the United States Supreme Court observed that "[a] conveyance is illegal if made with an intent to defraud the creditors of the grantor, but equally it is illegal if made with an intent to hinder or delay them." Under the Uniform Limited Partnership Law, N.J.S.A. 42:2A-1 to -72, the rights of a judgment creditor of a partner are defined by N.J.S.A. 42:2A-48, which provides that:
On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest.
Thus, even if plaintiff were able to secure a charge against Firmani's partnership interest, she would have to wait until a distribution was made before she could collect any money, and Firmani, as the sole general partner, has sole discretion as to distributions. The partnership is not set to terminate until December 31, 2030, and the partnership agreement allows for an extension beyond that date. Moreover, Firmani has sole discretion to dissolve the partnership, and even upon his death, the other partners retain the right to vote to continue the partnership. Consequently, the conveyance of the Haddonfield property from Firmani to the Family Partnership serves to greatly hinder and delay plaintiff's ability to collect the debt Firmani owes her.
In sum, Firmani's conveyance of the Haddonfield property clearly manifested at least five badges of fraud. The dubious and weak justifications for the transaction offered by Firmani were insufficient to rebut the inference of actual fraudulent intent provided by these badges of fraud. Therefore, the trial court correctly concluded that the conveyance was fraudulent.

II
This action was a direct outgrowth of the parties' matrimonial action. In fact, instead of filing this action, plaintiff probably could have brought a motion in aid of litigant's rights under Rule 1:10-3 to vacate Firmani's conveyance of the Haddonfield property. In that event, "[t]he court in its discretion [could] make an allowance for counsel fees to be paid ... to any party accorded relief under this rule." Ibid.
But even if plaintiff's claim was not maintainable under Rule 1:10-3, we are satisfied that because plaintiff's action involved an attempt by a litigant in a matrimonial action to hinder enforcement of the judgment, it should be treated as a family action within the intent of Rule 4:42-9(a)(1), which allows an award of counsel fees to a party to a matrimonial action who is "successful in the action, on any claim for equitable distribution [or] enforcement of interspousal agreements relating to family-type matters." Plaintiff's action to vacate Firmani's fraudulent conveyance of the Haddonfield property was an action for "enforcement of [the parties'] interspousal agreement" relating to the "equitable distribution" of marital assets. Therefore, even though plaintiff's action may not have been, strictly speaking, a "family action," plaintiff's counsel fee application falls within the intent of Rule 4:42-9(a)(1). However, for the reasons set forth in our opinion in Anzalone v. Anzalone Bros. Inc., 185 N.J.Super. 481, 488-89, 449 A.2d 1310 (App.Div.1982), we conclude that the counsel *859 fee obligation should be assessed solely upon Firmani, and not upon the Family Partnership.
Accordingly, the judgment vacating the conveyance of the Haddonfield property from Firmani to the Family Partnership is affirmed. The order denying plaintiff's application for counsel fees is reversed, and the case is remanded to the trial court for a determination of the amount of counsel fees to be assessed against Firmani.